Blanton Banks II
10130 Quilt Tree St
Las Vegas, NV, 89183
Phone: (313) 405-8321
E-mail: blantonb22@gmail.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LAS VEGAS DIVISION

PRO SE

**BLANTON BANKS, II**

Plaintiff,

v.

**TRANS UNION LLC,
EQUIFAX INFORMATION SERVICES
LLC, EXPERIAN INFORMATION
SOLUTIONS INC, CAPITAL ONE BANK
USA N, FIRST PREMIER BANK, US AUTO
CREDIT PURCHASE, I.Q. DATA
INTERNATIONAL INC, AD ASTRA
RECOVERY SERVICES INC, WELLS
FARGO BANK, KAPS & CO USA LLC,
TBOM/TOTAL CARD, I.C. SYSTEM INC,
CLIENT SERIVCES INC, ASSET RECOVERY
SOLUTIONS LLC, PORTFOLIO RECOVERY
ASSOCIATES, AARGON AGENCY INC,**

Defendants.

Case No.

2:21-cv-01580-APG-DJA

COMPLAINT

Fair Credit Reporting Act (15 U.S.C. §1681 et seq.)
Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.)
Truth In Lending Act (15 U.S.C. §1601 et seq.)
The Privacy Act (5 U.S.C. § 552a et seq.)
Violation of First Amendment (42 U.S.C. § 1983)
Violation of Fifth Amendment (42 U.S.C. § 1983)
Violation of Fourteenth Amendment (42 U.S.C. § 1983)
Freedom Of Information Act (5 USC § 552 et seq.)

DEMAND FOR JURY TRIAL

---

Plaintiff alleges that at all times material:

1.

This is a civil action brought pursuant to 42 U.S.C. § 1983, 15 U.S.C. § 1601 et seq., 15 U.S.C. § 1681 et seq., 15 U.S.C. § 1692 et seq., 5 U.S.C. § 552 et seq., and 5 USC § 552a et seq., against Defendants herein named and unnamed in their individual and official capacities for violations of Plaintiff's First, Fifth and Fourteenth Amendment Rights,

Page | 1- COMPLAINT

including but not limited to, the violations of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collections Practices Act ("FDCPA"), the Truth In Lending Act ("TILA"), the Freedom Of Information Act ("FOIA") and the Privacy Act and that said Defendants conspired to deprive Plaintiff of said rights, privileges and immunities. The Plaintiff invokes this Court's pendant jurisdiction over Nevada Revised Statutes, Administrative Regulations, 15 1601 et seq., 15 USC 1681 et seq., 15 USC 1692 et seq., 5 USC 552a et seq. and 42 USC 1983 that this court has authority to dispose of.

2.

Plaintiff Blanton Banks, II, ("plaintiff") is a natural person residing in the State of Nevada, as defined by the Fair Credit Reporting Act ("FCRA"), 15 USC § 1681a(c).

3.

Defendant I, Trans Union, LLC, ("Trans Union" or "Defendant I") residing at P.O. Box 2000, Chester, PA, 19016, under color of law, used or abused power that is possessed by virtue of state law and made possible only because he is clothed with authority of state law.

4.

Defendant II, Experian Information Solutions, INC, ("Experian" or "Defendant II") residing at P.O. Box 4500, Allen, TX, 75013, under color of law, acted the same as Defendant I.

5.

Defendant III, Equifax Information Services, LLC, ("Equifax" or "Defendant III") residing at P.O. Box 740256, Atlanta, GA, 30374, under color of law, acted the same as Defendants I and II.

6.

Defendant IV, Capital One Bank USA N, ("Capital One" or "Defendant IV") residing at 1680 Capital One Drive, McLean, VA, 22102, under color of law, acted the same as the above Defendants.

7.

Defendant V, Client Services, INC, ("Client Services" or "Defendant V") residing at 3451 Harry S. Truman Blvd, St. Charles, MO, 63301, under color of law, acted the same as the above Defendants.

8.

Defendant VI, First Premier Bank, ("First Premier" or "Defendant VI") residing at 601 S. Minnesota Ave., Sioux Falls, SD, 57104, under color of law, acted the same as the above Defendants.

9.

Defendant VII, Asset Recovery Solutions, LLC, ("Asset Recovery Solutions" or "Defendant VII") residing at 2200 E. Devon Ave., Suite 200, Des Plaines, IL, 60018, under color of law, acted the same as the above Defendants.

10.

Defendant VIII, Ad Astra Recovery Services, INC, ("Ad Astra" or "Defendant VIII") residing at 8918 W. 21ST Street N., Suite 200 PMB 303, Wichita, KS, 67205, under color of law, acted the same as the above Defendants.

11.

Defendant IX, Wells Fargo Bank, ("Wells Fargo" or "Defendant IX") residing at P.O. Box 14544, Des Moines, IA, 50306, under color of law, acted the same as the above Defendants.

12.

Defendant X, U.S. Auto Credit Purchasing Center, LLC, ("U.S. Auto Credit" or "Defendant X") residing at 8375 Dix Ellis Trl., Suite 3, Jacksonville, FL, 32256, under color of law, acted the same as the above Defendants.

13.

Defendant XI, I.Q. Data International, INC, ("I.Q. Data International" or "Defendant XI") residing at 21222 30TH Dr. SE, Suite 120, Bothell, WA, 98021, under color of law, acted the same as the above Defendants.

14.

Defendant XII, TBOM/Total Card, ("TBOM" or "Defendant XII") residing at P.O. Box 84930, Sioux Falls, SD, 57118, under color of law, acted the same as the above Defendants.

15.

Defendant XIII, KAPS & CO USA, LLC, ("KAPS & Co" or "Defendant XIII") residing at 2210 Plaza Dr., Suite 150, Rocklin, CA, 95765, under color of law, acted the same as the above Defendants.

16.

Defendant XIV, I.C. System, INC, ("I.C. System" or "Defendant XIV") residing at P.O. Box 64378, Saint Paul, MN, 55164, under color of law, acted the same as the above Defendants.

17.

Defendant XV, Aargon Agency, INC, ("Aargon Agency" or "Defendant XV") residing at P.O. Box 12914, Norfolk, VA, 23541, under color of law, acted the same as the above Defendants.

18.

Defendant XVI, Portfolio Recovery Associates, LLC, ("Portfolio Recovery Associates" or "Defendant XVI") residing at P.O. Box 12914, Norfolk, VA, 23541, under color of law, acted the same as the above Defendants.

19.

On or about July 8, 2020, plaintiff submitted a notarized debt validation dispute letter along with verifiable proof of identity and residency via certified mail to Trans Union (see Exhibit 1). After more than 30 days passing and Defendant I not responding to the plaintiff's debt validation dispute letter, plaintiff called Trans Union on or about August 12, 2020 to let them know that they acquiesced in the matter and must remove the items in the July 8, 2020 debt validation dispute letter from the plaintiff's credit report.

20.

During the phone call made by the plaintiff to Trans Union on or about August 12, 2020, plaintiff was informed that the phone call was being recorded. Plaintiff spoke to a Trans Union representative who stated that Defendant I had intended to respond to plaintiff's debt validation dispute letter, however, declined to do so without stating a reason for

their refusal. Plaintiff informed the Trans Union representative that because they have not responded as required by law that all accounts mentioned in the debt validation dispute letter must be removed from the credit report.

21.

On or about August 25, 2020, plaintiff submitted a second debt validation dispute letter to Trans Union with the invalidated items listed. Plaintiff indicated to Trans Union that they did not respond or provide any proof bearing signature to any of the items being reported on the plaintiff's credit report (see Exhibit 2).

22.

On or about September 2, 2020, Trans Union sent plaintiff a copy of his Trans Union credit report. The report still contained items listed in the July 8, 2020 debt validation dispute letter that were not validated (see Exhibit 3).

23.

On or about September 7, 2020 Trans Union sent the plaintiff a dispute status letter alleging that Trans Union has previously conducted an investigation of all the items in regards to the July 8, 2020 debt validation dispute letter and that all data furnishers listed in the July 8, 2020 debt validation dispute letter verified all the information. However, Trans Union did not do an actual or reasonable investigation, nor did they provide their Method of Validation or any contracts bearing the plaintiff's signature. Trans Union also states in their response that they are not required to investigate the same items again and informed plaintiff to contact the data furnishers himself (see Exhibit 4).

24.

On or about September 25, 2020, plaintiff again sent Trans Union a third debt validation dispute letter giving Trans Union an opportunity to cure on the July 8, 2020 and August 25, 2020 debt validation dispute letters (see Exhibit 5).

25.

Trans Union responded with another dispute status letter on or about October 5, 2020, once again informing the plaintiff that Trans Union does not have to reinvestigate the same items and instructing plaintiff to contact the data furnishers himself (see Exhibit 6).

26.

On or about November 19, 2020, plaintiff called Trans Union for a second time to give Trans Union an opportunity to cure their default and to request a copy of the August 12, 2020 recorded phone call pursuant to the Freedom Of Information Act, 5 USC § 552 et seq.

27.

Plaintiff spoke to Trans Union agent, Jesus, who refused to provide plaintiff with a copy of the audio recording as plaintiff requested pursuant to the Freedom Of Information Act, 5 U.S.C. § 552 et seq., and informed plaintiff that he would need to retain a lawyer in order to access a copy of the recorded phone call's audio.

28.

On or about January 4, 2021, plaintiff received a response letter from Aargon Agency, a party to the original disputed accounts in the July 8, 2020 debt validation dispute letter that plaintiff sent to Trans Union. Aargon Agency's response letter to plaintiff's debt validation dispute letter sent on or about December 12, 2020 informed the plaintiff that he has no account with their company (see Exhibit 7).

29.

On the same day, plaintiff called Trans Union again for a third time and spoke to the Trans Union agent, Solomon. Both Solomon and plaintiff agreed to the phone call being recorded. Plaintiff provided the Trans Union agent all self identifying information to locate his credit file and informed the Trans Union agent, Solomon, that he is in receipt of a response letter from Aargon Agency stating that no account with their company exists. Plaintiff continued to inform the Trans Union agent that he is aware that because of the response received by Aargon Agency stating they do not have an account for the plaintiff, that Trans Union, in fact, did not conduct an actual or reasonable investigation as Trans Union has stated in their response letters of September 2, 2020, September 7, 2020 and October 5, 2020.

30.

Trans Union agent, Solomon, informed plaintiff that because of the results of their investigation of a previous debt validation letter disputing the alleged accounts, Trans Union willfully did not respond to a dispute they received on October 2, 2020. However, Trans Union did receive the original debt validation dispute letter on or about July 8, 2020 and Aargon Agency was an alleged account listed in the dispute for validation. After plaintiff's first debt validation was not responded to by Trans Union and plaintiff's second and third request to have these items validated by Trans Union, Defendant I continued to state in their responses that Aargon Agency along with all other defendants, are valid reporting accounts. The Trans Union agent, Solomon, continued to inform the plaintiff that Trans Union cannot actually validate accounts (see Exhibit 8: audio recording).

31.

On or about January 17, 2021, plaintiff submitted a complaint to the Consumer Financial Protection Bureau against Trans Union. On or about February 18, 2021 Trans Union responded without addressing all of the plaintiff's issues in the plaintiff's complaint and the Consumer Financial Protection Bureau closed the complaint (see Exhibit 9). Plaintiff felt as if a remedy would not be given so he added Trans Union to this lawsuit.

32.

On or about July 8, 2020, plaintiff submitted a notarized debt validation dispute letter along with verifiable proof of identity and residency via certified mail to Experian (see Exhibit 10). After not receiving a response in regards to the plaintiff's debt validation dispute letter within 30 days, plaintiff sent a second debt validation dispute letter to Experian on or about August 25, 2020 giving Experian an opportunity to cure (see Exhibit 11).

33.

Almost 60 days later from the original debt validation dispute letter, plaintiff received a copy of his credit report from Experian on or about September 4, 2020 (see Exhibit 12). Experian did not conduct an actual or reasonable investigation of the disputed alleged accounts listed in the July 8, 2020 debt validation letter and ignored the plaintiff's dispute. Experian instructed the plaintiff to review the copy of his credit report sent to him and to contact Experian afterwards if plaintiff disagrees with any items listed on his credit report (see Exhibit 12).

34.

On or about September 15, 2020, plaintiff received an auto response post card in the mail from Experian stating that Experian can determine on their own whether disputed information should be changed or deleted without having to contact the furnisher or the vendor and explaining Experian's role in the dispute process (see Exhibit 13). On or about September 25, 2020, plaintiff sent Experian a formal third and final debt validation dispute letter disputing the alleged accounts pertaining to Defendants IV, VI, X, XI, XII, XIII, and XV, requesting Experian's Method of Validation and who specifically verified the alleged accounts (see Exhibit 14).

35.

On or about October 10, 2020, plaintiff received another auto response post card in the mail from Experian stating that Experian can determine on their own whether disputed information should be changed or deleted without having to contact the furnisher or the vendor and explaining Experian's role in the dispute process (see Exhibit 15). On or about October 13, 2020, Experian sent plaintiff a copy of his credit report pertaining to plaintiff's third written request for a reinvestigation. For a third time, Experian did not conduct an actual or reasonable investigation, nor did Experian provide their Method of Validation or who they spoke to directly in regards to the plaintiff's dispute of the alleged accounts pertaining to Defendants IV, VI, X, XI, XII, XIII and XV. The Experian dispute results response letter instructed the plaintiff to contact the alleged grantors himself (see Exhibit 16). Plaintiff felt that he would not get a remedy so he added Experian to this lawsuit.

36.

On or about July 8, 2020, plaintiff submitted a notarized debt validation dispute letter along with verifiable proof of identity and residency via certified mail to Equifax (see Exhibit 17).

37.

On or about July 14, 2020, plaintiff received a dispute results response letter from Equifax acknowledging that plaintiff has a mixed credit file (see Exhibit 18).

38.

On or about July 30, 2020, Equifax sent plaintiff an additional dispute results response letter and a copy of the plaintiff's credit report. The copy of the updated credit report from the alleged investigation that Equifax alleges was conducted still contained the disputed alleged accounts from the original July 8, 2020 debt validation dispute letter (see Exhibit 19). Equifax did not conduct an actual or reasonable investigation of the plaintiff's dispute.

39.

On or about August 25, 2020, plaintiff submitted a second debt validation dispute letter to Equifax with the invalidated items listed. The second debt validation dispute letter sent by the plaintiff informs Equifax that they did not comply to his dispute and requests the method of validation used by Equifax and the names of each individual they spoke to (see Exhibit 20).

40.

On or about October 8, 2020, plaintiff received a copy of his September 22, 2020 credit report from Equifax. The copy of the plaintiff's credit report still had the disputed alleged accounts reporting. Equifax for a third time did not conduct an actual or reasonable investigation nor did Equifax provide the plaintiff their method of validation, nor did Equifax provide the plaintiff with details of who they spoke to with firsthand knowledge of the disputed alleged accounts (see Exhibit 21).

41.

Because Defendants I, II and III continued to acquiesce in the debt validation dispute matter pertaining to the plaintiff, this forced the plaintiff to contact Defendants IV through XV himself.

42.

On or about December 12, 2020, plaintiff sent a debt validation dispute letter via registered mail to Capital One in regards to an alleged account that multiple entities are claiming a debt is owed (see Exhibit 22).

43.

On or about December 16, 2020, Capital One sent a response letter with a case number to the plaintiff requesting that the plaintiff sends his personal identifying information in order for Capital One to take action on his debt validation dispute letter (see Exhibit 23). The plaintiff sent Capital One this information in the debt validation dispute letter sent to Capital One on or about December 12, 2020 (see Exhibit 22).

44.

Because Capital One failed to comply with the debt validation dispute letter sent to them by the plaintiff, he sent a formal notice to Capital One giving them an opportunity to cure on or about January 4, 2021 via certified mail (see Exhibit 24).

45.

On or about January 14, 2021, Capital One sent the plaintiff a response letter with a different case number thanking him for contacting Capital One about the alleged account. Capital One did not provide any contracts or verifiable documentation stating that a valid claim of debt exists as the plaintiff has requested several times. Instead, Capital One placed a resolution of dispute disagreement code on the plaintiff's credit file to all of the major credit reporting agencies (see Exhibit 25). Because Capital One refused to offer the plaintiff an equitable remedy, he sent two complaints to the Consumer Financial Protection Bureau ("CFPB") on or about March 12, 2021. Plaintiff's complaint to the CFPB included Defendants, Capital One and Client Services, a debt collection agency, who is the second entity claiming to have an interest in this alleged account (see Exhibit 26).

46.

On or about March 15, 2021, Capital One responded to the plaintiff's CFPB complaint requesting more time to respond. On or about March 16, 2021, Client Services responded to plaintiff's CFPB complaint admitting that Client Services willfully did not comply with plaintiff's debt validation dispute letter because Client Services did not actually own the debt but were collecting on the alleged debt on behalf of Capital One (see Exhibit 27). Client Services never provided a copy of IRS Form-2848 to plaintiff as requested to prove their power of attorney over the alleged debt. Client Services also states that they are not a debt collection agency, but their written collection notice states otherwise (see Exhibit 28).

47.

On or about March 18, 2021, plaintiff was first notified by the CFPB that Capital One responded to his complaint with an attached letter. Pursuant to this letter, Capital One does not have any contract bearing plaintiff's signature and cannot provide contractual proof that a valid claim of debt exists pertaining to the plaintiff (see Exhibit 29).

48.

Capital One then mailed an additional response to plaintiff admitting that on or about March 16, 2021, this alleged debt that could not be validated by Capital One has been sold by Capital One to Defendant XVI, Portfolio Recovery Associates, a debt collection agency, without any contractual proof that a real debt exists pertaining to the plaintiff (see Exhibit 29).

49.

On or about March 30, 2021, Portfolio Recovery Associates sent plaintiff a debt collection notice pertaining to the alleged debt that Capital One could not originally provide any contractual proof of (see Exhibit 30). Then, on or about April 9, 2021, Portfolio Recovery Associates sent plaintiff a second debt collection notice attempting to create a contract with plaintiff by offering a flexible payment arrangement for this alleged debt that has no contract between the plaintiff and defendants Capital One, Client Services or Portfolio Recovery Associates (see Exhibit 31).

50.

On or about April 28, 2021, plaintiff sent Portfolio Recovery Associates a copy of their debt collection notice stamped with the words 'No Contract' along with a debt validation dispute notice (see Exhibit 32) and to date has not received a response pertaining to this alleged debt that has not and cannot be validated with any contractual proof bearing plaintiff's signature.

51.

Because Capital One, Client Services and Portfolio Recovery Associates have not provided any contract bearing plaintiff's signature, yet continued to willfully conspire and commit fraud on the plaintiff's name, plaintiff included them in this lawsuit.

52.

On or about December 12, 2020, plaintiff sent U.S. Auto Credit via registered mail a debt validation dispute letter pertaining to the alleged debt the plaintiff disputed originally in his July 8, 2020 debt validation dispute letter sent to Trans Union, Experian and Equifax because plaintiff has no contract or idea who U.S. Auto Credit is (see Exhibit 33).

53.

On or about December 30, 2020, U.S. Auto Credit sent plaintiff a five (5) page response with what they believe is enough information to report this alleged debt on the plaintiff's credit report. Their response did not bear any contractual proof of plaintiff's signature and contains false and misleading information (see Exhibit 34).

54.

Because U.S. Auto Credit failed to comply with the plaintiff's debt validation dispute letter, on or about January 5, 2021, plaintiff sent a formal notice to U.S. Auto Credit giving them an opportunity to cure on their acquiescence (see Exhibit 35).

55.

On or about January 22, 2021, U.S. Auto Credit sent plaintiff a response letter of refusal to investigate and declared plaintiff's dispute to be frivolous and irrelevant. U.S. Auto Credit continued in their response refusing to properly investigate or provide the proper documentation required by law to state that a valid claim of debt exists and re-sent copies of the same documents that do not prove any contract exists in regard to this alleged debt (see Exhibit 36). Plaintiff does not have any knowledge of U.S. Auto Credit nor any knowledge of the other entities in the document supposedly having an alleged security interest in the matter. In addition to this, U.S. Auto Credit willfully and negligently refused to comply because they believed that a credit repair organization was assisting the plaintiff (see Exhibit 36). Even if this were true, this is the plaintiff's lawful right to seek assistance in this matter as granted by the U.S. Congress whom backs the Federal Reserve Banking system.

56.

On or about February 6, 2021, plaintiff sent the Federal Trade Commission ("FTC") and the CFPB, via certified mail, his complaint regarding the willful negligence, willful non-compliance and negligent enablement of identity fraud on his name committed by U.S Auto Credit (see Exhibit 37). On or about February 12, 2021, the FTC sent plaintiff a response in regards to his complaint and on or about February 24, 2021 the CFPB sent plaintiff a response in regards to this same complaint (see Exhibit 38). To this present day, U.S. Auto Credit still has not responded to the complaint sent to the CFPB by the FTC or the plaintiff and continues to report this alleged account on plaintiff's credit report with no contract bearing plaintiff's signature to prove a valid debt exists. Plaintiff finally gave up and added U.S. Auto Credit to this lawsuit.

57.

On or about December 12, 2020, plaintiff sent a debt validation dispute letter to First Premier because after reviewing his credit report, plaintiff noticed First Premier is reporting an alleged debt, which plaintiff he has no knowledge of (see Exhibit 39).

58.

On or about January 4, 2021, First Premier sent plaintiff a letter stating that his request for validation did not satisfy the minimum requirements for a valid request, however, First Premier proceeded to explain why they believe the alleged debt is valid along with the last four (4) digits of an alleged card account (see Exhibit 40).

59.

On or about January 23, 2021, plaintiff sent a formal notice to the attention of First Premier's Chief Financial Officer requesting, once again, debt validation of the alleged account being reported on his credit report by First Premier (see Exhibit 41). Plaintiff's offer gave First Premier an opportunity to cure their acquiescence. Plaintiff also included a copy of a debt collection notice from a different entity, Asset Recovery Solutions, claiming they have an alleged interest in this matter (see Exhibit 41).

60.

On or about February 3, 2021, First Premier sent plaintiff a letter with an alleged card account ending in four (4) digits, but provided no other alleged account contract. First Premier's letter continues to state that they are unable to determine what the plaintiff is disputing and avoids validating plaintiff's dispute under threat, duress and coercion by trying to get plaintiff to create an Affidavit of Unauthorized Use contract and willfully refused to validate unless plaintiff signs said document (see Exhibit 42). In addition to this, First Premier sent plaintiff another letter on or about February 1, 2021 providing what they believe to be validation of this alleged debt (see Exhibit 43).

61.

Upon plaintiff reviewing the information, plaintiff noticed that First Premier sent what looks like an itemized bill but did not send any signed contract bearing plaintiff's signature. First Premier also sent plaintiff documents showing that they were invading the plaintiff's privacy by getting his credit report without his permission (see Exhibit 43).

62.

On or about February 12, 2021 First Premier sent the plaintiff another letter claiming to have completed their investigation based on what they believe is enough to state a valid claim. By this response, First Premier has once again

for a fourth time acquiesced in the matter by failing to comply to the debt validation dispute letter and the final notice to cure letter sent to them by the plaintiff (see Exhibit 44).

63.

Because First Premier refused to obey consumer credit law and remove the item from the plaintiff's credit report, the plaintiff filed a complaint with the CFPB on or about March 3, 2021 in regards to First Premier and Asset Recovery Solutions conspiring to willfully commit fraud on his name without having any contractual proof that the alleged debt is actually valid or able to be reported on his credit report (see Exhibit 45). On this same day, the CFPB responded that the complaint the plaintiff sent to them pertaining to First Premier would be forwarded to the Federal Reserve Board because they are better able to help with his issue. The CFPB also entered the plaintiff's complaint into the Consumer Sentinel Network, a database operated by the FTC that is used to identify questionable business practices (see Exhibit 46).

64.

On or about March 8, 2021, the plaintiff received notice from the Federal Reserve Board that his complaint has been received and will be responded to by the Federal Reserve Bank of Minneapolis within 60 days (see Exhibit 47).

65.

On or about March 10, 2021 plaintiff received a letter in the mail from First Premier informing the plaintiff that they validated the alleged debt, however, once again, for a fifth time, provided no evidence to the plaintiff of any kind of validation of an actual contract existing. First Premier continued to state that they are not required to provide any proof that a debt exists with their entity (see Exhibit 48). Pursuant to the FCRA, this is false.

66.

On or about March 11, 2021, plaintiff received a notice from the CFPB in regards to Asset Recovery Solutions stating that they are no longer serving this alleged account (see Exhibit 49). Asset Recovery Solutions did not respond to the plaintiff in regards to his debt validation dispute letter sent on or about January 23, 2021 (see Exhibit 41) but forwarded his dispute to their client whom the plaintiff is not aware of. Asset Recovery Solutions could not provide any contract belonging to the plaintiff either. Plaintiff finally gave up and added First Premier and Asset Recovery Solutions to this lawsuit.

67.

On or about December 12, 2020, plaintiff sent I.Q. Data International a debt validation dispute letter via U.S. registered mail pertaining to an alleged account with I.Q. Data International reporting on his credit report (see Exhibit 50). On or about December 18, 2020 I.Q. Data International refused to accept plaintiff's mailed debt validation dispute letter and returned it to him at or around 3:17 PM (see Exhibit 51).

68.

On or about January 29, 2021 and January 30, 2021, I.Q. Data International sent the plaintiff debt collection notices after refusing to accept his debt validation dispute letter sent to them via registered mail (see Exhibit 52). Plaintiff sent a formal notice to I.Q. Data International to the attention of their Treasurer on or about February 5, 2021 to give I.Q. Data International an opportunity to cure their default (see Exhibit 53). I.Q. Data International received plaintiff's formal notice on or about February 11, 2021 at or around 11:17 AM (see Exhibit 54). Because I.Q. Data International refused plaintiff's debt validation dispute letter on or about December 12, 2020 and still has not responded to date to plaintiff's formal notice giving them an opportunity to cure, plaintiff gave up and has added I.Q. Data International to this lawsuit.

69.

On or about December 12, 2020, plaintiff sent Ad Astra a debt validation dispute letter via U.S. registered mail pertaining to an alleged account with Ad Astra that is reporting on his credit report (see Exhibit 55).

70.

On or about December 24, 2020, Ad Astra sent plaintiff a debt collection notice claiming to be in charge of this alleged debt sent to Ad Astra by a third-party, however, failed to comply to the plaintiff's debt validation dispute letter in its entirety (see Exhibit 56).

71.

Because plaintiff has no signed contract with Ad Astra and Ad Astra failed to comply with the original debt validation letter, on or about January 4, 2021, plaintiff sent Ad Astra a formal notice giving them an opportunity to cure (see Exhibit 57). Ad Astra received the plaintiff's formal notice on or about January 8, 2021 at or around 12:36 PM (see Exhibit 58).

72.

More than two hundred and twenty-six (226) days has passed and plaintiff still has not received a response from Ad Astra to date. Since Ad Astra has acquiesced in the matter and is still reporting this alleged debt on the plaintiff's credit report, plaintiff has added Ad Astra to this lawsuit.

73.

On or about December 12, 2020, plaintiff sent Wells Fargo a debt validation dispute letter U.S. registered mail pertaining to an alleged debt reporting on his credit report asking Wells Fargo to prove they actually have a debt on him (see Exhibit 59).

74.

On or about January 6, 2021, Wells Fargo sent the plaintiff what they feel is validation of an alleged account belonging to him (see Exhibit 60). Wells Fargo acquiesced in the matter pursuant to the debt validation dispute letter sent to them by the plaintiff.

75.

On or about February 3, 2021, plaintiff sent a formal notice to Wells Fargo giving them an opportunity to cure their acquiescence (see Exhibit 61).

76.

On or about February 18, 2021, Wells Fargo sent the plaintiff a response to his formal notice. Wells Fargo, once again, acquiesced in the matter and did not disclose all of the material facts to the plaintiff (see Exhibit 62).

77.

On or about February 23, 2021, Wells Fargo sent the plaintiff another notice pertaining to his alleged debt (see Exhibit 63). Wells Fargo failed to explain to the plaintiff how the money he provided and used to open a secured credit card has hurt Wells Fargo in any way. Plaintiff argues that he is the original creditor in the matter and therefore does not owe any debts on his own money. Because Wells Fargo continues to violate the Truth In Lending Act, plaintiff has added Wells Fargo to this lawsuit.

78.

On or about December 12, 2020, plaintiff sent a debt validation dispute letter via U.S. registered mail to the address being reported on his credit report by TBOM pertaining to an alleged account (see Exhibit 64). On or about December 24, 2020, the mailed letter was returned to the plaintiff as being undeliverable to the address being reported (see Exhibit 65). This is a violation of inaccurate information being reported on a consumer's credit report. The plaintiff notified the major credit reporting agencies, neither Trans Union, Experian or Equifax removed the alleged account. This forced the plaintiff to do more research in finding a deliverable address belonging to TBOM.

79.

On or about February 5, 2021, plaintiff located a deliverable address for TBOM and sent a formal notice to the attention of the Chief Financial Officer at TBOM. The formal notice contained a copy of the original debt validation letter, a copy of the undeliverable mailed envelope, a copy of the TBOM Foreign Withdrawal for doing business in the State of Nevada where plaintiff resides and gave TBOM an opportunity to cure (see Exhibit 66).

80.

On or about February 12, 2021, TBOM received the plaintiff's formal notice and additional materials (see Exhibit 67). It has been more than one hundred and ninety (190) days and TBOM to date still has not responded, but are still reporting this alleged debt on the plaintiff's credit report. TBOM is willfully acquiescing in the matter and plaintiff is not receiving any response, so plaintiff has given up and added TBOM to this lawsuit.

81.

On or about December 12, 2020, plaintiff sent KAPS & Co. a debt validation dispute letter via U.S. registered mail pertaining to an alleged account on his credit report (see Exhibit 68). On or about December 31, 2020, plaintiff was notified by the U.S.P.S. that delivery was attempted and that an authorized recipient was not available to accept the mailed debt validation dispute letter (see Exhibit 69). Plaintiff scheduled a re-delivery and the debt validation dispute letter was delivered on or about January 12, 2021 to KAPS & Co (see Exhibit 69). Almost one hundred and fifty-five (155) days passed without the plaintiff receiving a response from KAPS & Co. after they had received his debt validation dispute on or about January 12, 2021.

82.

Plaintiff noticed that this duplicate alleged account is being reported on his credit report fraudulently by KAPS & Co. and TBOM and made the major credit reporting agencies Trans Union, Experian and Equifax all aware of this. However, it is still reporting on his credit report to date.

83.

On or about April 21, 2021, KAPS & Co sent the plaintiff a debt collection notice on company letterhead (see Exhibit 70). KAPS & Co. has acquiesced in the entire matter and after almost one hundred and fifty-five (155) days, they have not provided the plaintiff any validating proof of a signed contract between the plaintiff and KAPS & Co., nor TBOM, nor the alleged issuer Mid America Bank and Trust. Plaintiff is convinced that KAPS & Co. is willfully being negligent, non-compliant and engaging in the enablement of identity fraud on his name. Since the plaintiff is willfully and negligently being wronged in this entire matter, he has added KAPS & Co. to this lawsuit.

84.

On or about December 12, 2020, plaintiff sent I.C. System a debt validation dispute letter via U.S. registered mail pertaining to an alleged debt reporting on his credit report (see Exhibit 71). Because more than 30 days passed without the plaintiff receiving any response from I. C. System, a debt collection agency, the plaintiff tracked the mailed letter he sent. The mailed debt validation dispute letter was delivered to I.C. System on December 21, 2020 at or around 6:52 AM (see Exhibit 72).

85.

Because the plaintiff had received no response from I.C. System, he sent I.C. system a formal notice on or about February 3, 2021 with a copy of his original debt validation dispute letter from on or about December 12, 2020 to give I.C. System an opportunity to cure their default (see Exhibit 73). On or about February 8, 2021, I.C. System received the plaintiff's second formal notice at or around 6:52 AM (see Exhibit 74). It has been more than two-hundred and fifty-five (255) days and plaintiff still has not received any form or response from I.C. System in regards to his debt validation dispute letter. Because I.C. System has acquiesced in the matter, plaintiff has added them to this lawsuit. After almost one year of disputing and dealing with the acquiescence, willful negligence and non-compliance and all of the defendant's blatant disregard for the law, plaintiff finally gave up and filed this lawsuit.

## FIRST CLAIM FOR RELIEF

86.

Plaintiff realleges paragraphs 1- 85 as if fully set forth herein.

87.

Trans Union, Experian and Equifax willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. § 1681 et seq.

## SECOND CLAIM FOR RELIEF

88.

Plaintiff realleges paragraphs 41- 85 as if fully set forth herein.

89.

Defendants IV through XVI willfully failed to comply with the requirements imposed pursuant to the FDCPA, 15 U.S.C. § 1692 et seq.

## THIRD CLAIM FOR RELIEF

90.

Plaintiff realleges paragraphs 73-77 as if fully set forth herein.

91.

Defendant IX willfully failed to comply with the requirements imposed pursuant to the Truth In Lending Act by doing a set-off on plaintiffs account, taking the plaintiffs collateral deposit and pursuing to collect interest on the account after the collateral set-off.

## FOURTH CLAIM FOR RELIEF

92.

Plaintiff realleges paragraph 61 as if fully set forth herein.

93.

Defendant VI willfully failed to comply with the requirements imposed pursuant to the Privacy Act, 5 U.S.C. § 552a et seq.

## FIFTH CLAIM FOR RELIEF

94.

Plaintiff realleges paragraphs 18-26 as if fully set forth herein.

95.

Defendant I willfully failed to comply with the requirements imposed pursuant to the FOIA, 5 U.S.C. § 552 et seq.

## PRAYER FOR RELIEF

Plaintiff demands a jury trial on all claims. Wherefore, plaintiff Blanton Banks II prays for a declaratory judgment declaring the acts of the defendants unconstitutional and injunctive relief preventing defendants from being able to use erroneous information in plaintiff's credit report and charging plaintiff interest on a collateralized account and grant plaintiff the maximum actual and punitive damages.

DATED this ~~26th~~ 21st day of ~~August~~ September 2021.

/s/ Blanton Banks II, Authorized Representative

_Authorized Representative_
Blanton Banks II, Authorized Representative
blantonb22@gmail.com
Telephone: (313) 405-8321
Pro se