Blanton Banks II
10130 Quilt Tree St
Las Vegas, NV, 89183
Phone: (313) 405-8321
E-mail: blantonb22@gmail.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LAS VEGAS DIVISION

|  |  |
|---|---|
|  | **PRO SE** |
| **BLANTON BANKS, II** | Case No. |
| Plaintiff, | 2:21-cv-01580-APG-DJA |
| v. |  |
|  | **FIRST AMENDED COMPLAINT** |
| **TRANS UNION LLC**, | |
| **EQUIFAX INFORMATION SERVICES** | Fair Credit Reporting Act (15 U.S.C. §1681 et seq.) |
| **LLC, EXPERIAN INFORMATION** | Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.) |
| **SOLUTIONS INC,** | Violation of First Amendment (42 U.S.C. § 1983) |
| **FIRST PREMIER BANK, US AUTO** | Violation of Fifth Amendment (42 U.S.C. § 1983) |
| **CREDIT PURCHASE, I.Q. DATA** | Violation of Fourteenth Amendment (42 U.S.C. § 1983) |
| **INTERNATIONAL INC, AD ASTRA** | |
| **RECOVERY SERVICES INC,WELLS** | |
| **FARGO BANK, KAPS & CO USA LLC,** | |
| **TBOM/TOTAL CARD, I.C. SYSTEM INC,** | |
| **ASSET RECOVERY SOLUTIONS LLC,** | |
| **AARGON AGENCY INC,** | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

_____

Plaintiff alleges that at all times material:

1.

This is a civil action brought pursuant to 42 U.S.C. § 1983, 15 U.S.C. § 1601 et seq., 15 U.S.C. § 1681 et seq., and 15 U.S.C. § 1692 et seq., against Defendants herein named and unnamed in their individual and official capacities for violations of Plaintiff's First, Fifth and Fourteenth Amendment Rights, including but not limited to, the violations of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collections Practices Act ("FDCPA"), the Plaintiff's Consumer Rights

Page | 1- COMPLAINT

and that said Defendants conspired to deprive Plaintiff of said rights, privileges and immunities. The Plaintiff invokes this Court's pendant jurisdiction over Nevada Revised Statutes, Administrative Regulations, 15 USC § 1601 et seq., 15 USC § 1681 et seq., 15 USC § 1692 et seq., and 42 USC § 1983 that this court has authority to dispose of.

2.

Plaintiff Blanton Banks, II, ("plaintiff") is a natural person residing in the State of Nevada, as defined by the Fair Credit Reporting Act ("FCRA"), 15 USC § 1681a(c).

3.

Defendant I, Trans Union, LLC, ("Trans Union" or "Defendant I") residing at P.O. Box 2000, Chester, PA, 19016, under color of law, used or abused power that is possessed by virtue of state law and made possible only because he is clothed with authority of state law.

4.

Defendant II, Experian Information Solutions, INC, ("Experian" or "Defendant II") residing at P.O. Box 4500, Allen, TX, 75013, under color of law, acted the same as Defendant I.

5.

Defendant III, Equifax Information Services, LLC, ("Equifax" or "Defendant III") residing at P.O. Box 740256, Atlanta, GA, 30374, under color of law, acted the same as Defendants I and II.

6.

Defendant IV, First Premier Bank, ("First Premier" or "Defendant IV") residing at 601 S. Minnesota Ave., Sioux Falls, SD, 57104, under color of law, acted the same as the above Defendants.

7.

Defendant V, Asset Recovery Solutions, LLC, ("Asset Recovery Solutions" or "Defendant V") residing at 2200 E. Devon Ave., Suite 200, Des Plaines, IL, 60018, under color of law, acted the same as the above Defendants.

8.

Defendant VI, Ad Astra Recovery Services, INC, ("Ad Astra" or "Defendant VI") residing at 8918 W. 21ST Street N., Suite 200 PMB 303, Wichita, KS, 67205, under color of law, acted the same as the above Defendants.

9.

Defendant VII, U.S. Auto Credit Purchasing Center, LLC, ("U.S. Auto Credit" or "Defendant VIII") residing at 8375 Dix Ellis Trl., Suite 3, Jacksonville, FL, 32256, under color of law, acted the same as the above Defendants.

10.

Defendant VIII, I.Q. Data International, INC, ("I.Q. Data International" or "Defendant IX") residing at 21222 30TH Dr. SE, Suite 120, Bothell, WA, 98021, under color of law, acted the same as the above Defendants.

11.

Defendant IX, TBOM/Total Card, ("TBOM" or "Defendant X") residing at P.O. Box 84930, Sioux Falls, SD, 57118, under color of law, acted the same as the above Defendants.

12.

Defendant X, KAPS & CO USA, LLC, ("KAPS & Co" or "Defendant XI") residing at 2210 Plaza Dr., Suite 150, Rocklin, CA, 95765, under color of law, acted the same as the above Defendants.

13.

Defendant XI, I.C. System, INC, ("I.C. System" or "Defendant XII") residing at P.O. Box 64378, Saint Paul, MN, 55164, under color of law, acted the same as the above Defendants.

14.

Defendant XII, Aargon Agency, INC, ("Aargon Agency" or "Defendant XIII") residing at 8668 Spring Mountain Road, Suite 102, Las Vegas, NV, 89117, under color of law, acted the same as the above Defendants.

15.

On or about July 8, 2020, plaintiff submitted a notarized debt validation dispute letter along with verifiable proof of identity and residency via certified mail to Trans Union (see Exhibit 1). Pursuant to 15 USC 1681g et seq, plaintiff is afforded the right to be disclosed with everything that is contained in his credit file. After more than 30 days passing and Defendant I not responding to the plaintiff's debt validation dispute letter, plaintiff called Trans Union on or about August 12, 2020 to let them know that they acquiesced in the matter and must remove the items in the July 8, 2020 debt validation dispute letter from the plaintiff's credit report as required pursuant to 15 USC § 1681i(a)(1)(A).

16.

During the phone call made by the plaintiff to Trans Union on or about August 12, 2020, plaintiff was informed that the phone call was being recorded. Plaintiff spoke to a Trans Union representative who stated that Defendant I had intended to respond to plaintiff's debt validation dispute letter, however, declined to do so without stating a reason for their refusal. Plaintiff informed the Trans Union representative that because they have not responded within the 30 day period allotted pursuant to the Fair Credit Reporting Act, that all accounts mentioned in the July 8, 2020 debt validation dispute letter must be removed from the credit report immediately.

17.

On or about August 25, 2020, plaintiff submitted a second debt validation dispute letter to Trans Union with the invalidated items listed. Pursuant to 15 USC 1681g et seq, plaintiff is afforded the right to be disclosed with everything that is contained in his credit file. Plaintiff indicated to Trans Union that they did not respond or provide any proof bearing signature of a contract for any of the items being reported on the plaintiff's credit report (see Exhibit 2).

18.

On or about September 2, 2020, Trans Union sent plaintiff a copy of his Trans Union credit report. The report still contained items listed in the July 8, 2020 debt validation dispute letter that were not validated (see Exhibit 3).

19.

On or about September 7, 2020 Trans Union sent the plaintiff a dispute status letter alleging that Trans Union has previously conducted an investigation of all the items in regards to the July 8, 2020 debt validation dispute letter and that all data furnishers listed in the July 8, 2020 debt validation dispute letter verified all the information. However, Trans Union did not do an actual or reasonable investigation, nor did they provide their Method of Validation or any contracts

bearing the plaintiff's signature. Trans Union also states in their response that they are not required to investigate the same items again and informed plaintiff to contact the data furnishers himself (see Exhibit 4).

20.

On or about September 25, 2020, plaintiff, once again, sent Trans Union a third debt validation dispute letter giving Trans Union an opportunity to cure on the July 8, 2020 and August 25, 2020 debt validation dispute letters (see Exhibit 5). Pursuant to 15 USC 1681g et seq, plaintiff is afforded the right to be disclosed with everything that is contained in his credit file.

21.

Trans Union responded with another dispute status letter on or about October 5, 2020, once again informing the plaintiff that Trans Union does not have to reinvestigate the same items and instructing plaintiff to contact the data furnishers himself (see Exhibit 6). Trans Union failed to comply pursuant to 15 USC 1681g et seq.

22.

On or about November 19, 2020, plaintiff called Trans Union for a second time to give Trans Union an opportunity to cure their default and to request a copy of the August 12, 2020 recorded phone call pursuant to the Freedom Of Information Act, 5 USC § 552 et seq.

23.

Plaintiff spoke to Trans Union agent, Jesus, who refused to provide plaintiff with a copy of the audio recording as plaintiff requested pursuant to the Freedom Of Information Act, 5 U.S.C. § 552 et seq., and informed plaintiff that he would need to retain a lawyer in order to access a copy of the recorded phone call's audio.

24.

On or about January 4, 2021, plaintiff received a response letter, dated December 15, 2020, from Aargon Agency, a debt collector (see 15 USC § 1692a(6) and a party to the original disputed accounts in the July 8, 2020 debt validation dispute letter that plaintiff sent to Trans Union. Aargon Agency failed to validate the alleged debt that they had been reporting on the plaintiff's credit report negligently as required by 15 USC § 1692g. Aargon Agency's response letter to the debt validation dispute letter that the plaintiff sent them on or about December 12, 2020 to make sure this alleged debt did not arise out of bona fide error, informed the plaintiff that he actually has no account with their company (see Exhibit 7).

25.

On the same day, plaintiff called Trans Union again for a third time and spoke to the Trans Union agent, Solomon. Both Solomon and plaintiff agreed to the phone call being recorded. Plaintiff provided the Trans Union agent all self identifying information to locate his credit file and informed the Trans Union agent, Solomon, that he is in receipt of a response letter from Aargon Agency stating that no account with their company exists. Plaintiff continued to inform the Trans Union agent that he is aware that because of the response received by Aargon Agency stating they do not have an account for the plaintiff, that Trans Union, in fact, did not conduct an actual or reasonable investigation as Trans Union has stated in their response letters of September 2, 2020, September 7, 2020 and October 5, 2020.

26.

Trans Union agent, Solomon, informed plaintiff that because of the results of their investigation of a previous debt validation letter disputing the alleged accounts, Trans Union willfully did not respond to a dispute they received on

Page | 4- COMPLAINT

October 2, 2020. However, Trans Union did receive the original debt validation dispute letter on or about July 8, 2020 and Aargon Agency was an alleged account listed in the dispute for validation. After plaintiff's first debt validation was not responded to by Trans Union and plaintiff's second and third request to have these items validated by Trans Union, Defendant I continued to state in their responses that Aargon Agency along with all other defendants, are valid reporting accounts. The Trans Union agent, Solomon, continued to inform the plaintiff that Trans Union cannot actually validate accounts (see Exhibit 8: audio recording).

27.

On or about January 17, 2021, plaintiff submitted a complaint to the Consumer Financial Protection Bureau against Trans Union. On or about February 18, 2021 Trans Union responded without addressing all of the plaintiff's issues in the plaintiff's complaint pertaining to their violations of the Fair Credit Reporting Act and the Consumer Financial Protection Bureau closed the complaint (see Exhibit 9). Plaintiff felt as if a remedy would not be given so he added Trans Union to this lawsuit for their violations of the Fair Credit Reporting Act pursuant to 15 USC § 1681i(a).

28.

On or about July 8, 2020, plaintiff submitted a notarized debt validation dispute letter regarding the alleged debt accounts pertaining to Defendants IV, VII, VIII, IX and XI, along with verifiable proof of identity and residency via certified mail to Experian (see Exhibit 10). Pursuant to 15 USC 1681g et seq, plaintiff is afforded the right to be disclosed with everything that is contained in his credit file. The debt validation dispute letter notified Experian that they are required by federal law to verify through the physical verification of the original signed consumer contract, any and all accounts they post on a consumer credit report. Pursuant to the U.S. Postal Mail tracking system, Experian received the debt validation dispute letter on or about July 14, 2020. After not receiving a response from Experian on or by August 13, 2020, within 30 days, in regards to the plaintiff's debt validation dispute letter as required pursuant to the Fair Credit Reporting Act, 15 USC § 1681i(a)(1)(A), plaintiff sent a second debt validation dispute letter to Experian on or about August 25, 2020. Plaintiff's August 25, 2020 debt validation dispute letter to Experian, informs Experian of their violation of federal law for failing to respond within 30 days after they received plaintiff's debt validation dispute letter (see Exhibit 11). Pursuant to 15 USC § 1681i(a)(5)(A)(i), Experian must remove the items from the credit report pertaining to the above mentioned defendants because they did not validate nor provide full disclosure of said disputed items to plaintiff within the initial 30 days.

29.

Almost 60 days later from the original debt validation dispute letter that was received by Experian on or about July 14, 2020, the plaintiff received a copy of his credit report from Experian on or about September 4, 2020 (see Exhibit 12). Pursuant to 15 USC § 1681i(a)(1)(A), Experian did not conduct an actual or reasonable reinvestigation of the disputed alleged accounts pertaining to Defendants IV, VII, VIII, IX and XI, listed in the July 8, 2020 debt validation letter. Furthermore, Experian willfully did not comply with the plaintiff's dispute letter informing Experian that they are required to remove all accounts pertaining to above mentioned defendants pursuant to 15 USC § 1681i(a)(5)(A)(i)-(ii). Experian acquiesced in the matter and instructed the plaintiff to review the copy of his credit report sent to him, dated September 4, 2020, and to contact Experian afterwards if plaintiff disagrees with any items listed on his credit report (see Exhibit 12).

30.

On or about September 15, 2020, plaintiff received an auto response post card in the mail from Experian stating that Experian can determine on their own whether disputed information should be changed or deleted without having to contact the furnisher or the vendor and explaining Experian's role in the dispute process (see Exhibit 13). Pursuant to 15 USC § 1681i(a)(1)(A), a Credit Reporting Agency must conduct a reasonable reinvestigation within 30 days from the day

they receive it to determine whether the disputed information is inaccurate. If a credit reporting agency fails to do so within the 30 day window, that information must be removed from the file pursuant to 15 USC § 1681i(a)(5)(A)(i)-(ii). Because Experian, for a third time, acquiesced and failed to move in honor, pursuant to 15 USC § 1681i(a)(1)(A) and 15 USC § 1681i(a)(5)(A)(i)-(ii), on or about September 25, 2020, plaintiff sent Experian a formal third and final debt validation dispute letter disputing the alleged accounts as they have not been validated pertaining to Defendants IV, VII, VIII, IX and XI, requesting Experian's Method of Validation, who specifically verified the alleged above accounts, any and all copies of any alleged original documentation and or any alleged consumer contracts bearing the plaintiff's signature (see Exhibit 14).

31.

On or about October 10, 2020, plaintiff received another auto response post card in the mail from Experian stating that Experian can determine on their own whether disputed information should be changed or deleted without having to contact the furnisher or the vendor and explaining Experian's role in the dispute process (see Exhibit 15). Pursuant to 15 USC § 1681i(a)(1)(A), a Credit Reporting Agency must conduct a reasonable reinvestigation within 30 days from the day they receive it to determine whether the disputed information is inaccurate. If a credit reporting agency fails to do so within the 30 day window, that information must be removed from the file pursuant to 15 USC § 1681i(a)(5)(A)(i)-(ii). Three days later on or about October 13, 2020, Experian sent plaintiff a copy of his credit report pertaining to plaintiff's third written request for a reinvestigation. For a third time, pursuant to 15 USC § 1681i(a)(1)(A), Experian did not conduct an actual or reasonable reinvestigation, nor did Experian provide their Method of Validation or who they spoke to directly in regards to the plaintiff's dispute of the alleged accounts nor any and all copies of any alleged original documentation and or any alleged consumer contracts bearing the plaintiff's signature pertaining to Defendants IV, VII, VIII, IX and XI. The Experian dispute results response letter instructed the plaintiff to contact the alleged credit grantors himself (see Exhibit 16). After Plaintiff made numerous attempts to have the invalidated accounts reporting on his credit report validated and to receive full disclosure and to make sure the alleged accounts did not arise out of error, plaintiff felt that he would not get a remedy so he added Experian to this lawsuit.

32.

On or about July 8, 2020, plaintiff submitted a notarized debt validation dispute letter pursuant to 15 USC § 1681i(a)(1)(A) requesting credit reporting agency Equifax to verify through the physical verification of the original signed consumer contract any and all accounts they have posted on plaintiff's credit report pertaining to Defendants IV, VII, VIII and IX. Pursuant to 15 USC 1681g et seq, plaintiff is afforded the right to be disclosed with everything that is contained in his credit file. Plaintiff submitted this dispute letter along with verifiable proof of identity and residency via certified mail to Equifax (see Exhibit 17). Per the U.S. Postal Mail tracking system Equifax received plaintiff's dispute letter on or about July 12, 2020.

33.

On or about July 14, 2020, plaintiff received a dispute results response letter from Equifax acknowledging that plaintiff has a mixed credit file (see Exhibit 18). However, pursuant to 15 USC § 1681i(a)(1)(A) Equifax did not respond with any verifiable or accurate information pertaining to the above disputed alleged accounts with the Defendants mentioned above.

34.

On or about July 30, 2020, Equifax sent plaintiff an additional dispute results response letter and a copy of the plaintiff's credit report. The copy of the updated credit report from the investigation that Equifax alleges was conducted still contained the disputed alleged accounts from the original July 8, 2020 debt validation dispute letter pertaining to Defendants IV, VII, VIII and IX (see Exhibit 19). Pursuant to 15 USC § 1681i(a)(1)(A), Equifax did not conduct an actual

or reasonable reinvestigation of the plaintiff's dispute by their failure to provide verifiable proof of an original signed contract bearing plaintiff's signature pertaining to all of the Defendants mentioned above and they failed to comply with 15 USC §1681e(b), whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

35.

On or about August 25, 2020, plaintiff submitted a second debt validation dispute letter to Equifax with the invalidated accounts listed pertaining to Defendants IV, VII, VIII and IX, which Equifax had until September 24, 2020 to respond to plaintiff. Pursuant to 15 USC § 1681i(a)(1)(A) the second debt validation dispute letter sent by the plaintiff informs Equifax that they did not comply to federal law and that Equifax stated in writing that they verified that these alleged accounts are being reported correctly, however, Equifax did not state who verified or validated these alleged accounts. Because Equifax violated 15 USC § 1681i(a)(1)(A) and 15 USC § 1681e(b), plaintiff requested the method of validation used by Equifax, the names of each individual they spoke to who allegedly verified the alleged accounts pertaining to the above mentioned defendants, any and all original documentation or contracts bearing plaintiff's signature and plaintiff informed Equifax of the Civil liability and the remedy available to plaintiff for negligent noncompliance (see Exhibit 20).

36.

On or about October 8, 2020, plaintiff received a response from Equifax with a copy of his September 22, 2020 credit report. The copy of the plaintiff's credit report still had the disputed alleged accounts pertaining to the above mentioned defendants. Equifax, for a third time, did not conduct an actual or reasonable reinvestigation and responded well beyond the 30 day deadline of September 24, 2020 as allowed pursuant to 15 USC § 1681i(a)(1)(A). Equifax did not provide the plaintiff their method of validation, nor did Equifax provide the plaintiff with details of who they spoke to with firsthand knowledge of the disputed alleged accounts pertaining to the above mentioned defendants or any copies of any original documentation or contracts bearing the plaintiff's signature relating to these alleged validated accounts (see Exhibit 21).

37.

Because Defendants I, II and III continued to be willfully negligent and noncompliant in the debt validation dispute matter pursuant to 15 USC § 1681i(a)(1)(A) and 15 USC § 1681e(b) and after several attempts by the plaintiff to make sure that these alleged debt accounts did not arise out of a bona fide error, this forced the plaintiff to add all three major credit reporting agencies to the lawsuit. It also forced the plaintiff to contact the debt collectors (see 15 USC § 1692a(6)), Defendants IV through XII, himself to request validation of the alleged accounts the debt collectors have reporting on plaintiff's credit report.

38.

On or about December 12, 2020, pursuant to 15 USC § 1692g, plaintiff sent U.S. Auto Credit, a debt collector pursuant to 15 USC § 1692a(6), via registered mail a debt validation dispute letter pertaining to the alleged debt the plaintiff disputed originally in his July 8, 2020 debt validation dispute letter sent to Trans Union, Experian and Equifax. Plaintiff has no contract or idea who U.S. Auto Credit is (see Exhibit 22). U.S. Auto Credit received plaintiff's initial communication on December 22, 2020 but did not respond to plaintiff with written communication pertaining to the debt until December 30, 2020. Pursuant to 15 USC §1692g(a), U.S. Auto Credit did not send plaintiff written notice within five days.

39.

On or about December 30, 2020, U.S. Auto Credit sent plaintiff a five (5) page response with what they believe is enough information to report this alleged debt on the plaintiff's credit report (see Exhibit 23). U.S. Auto Credit's response did not bear any contractual proof of plaintiff's signature and contains false and misleading information pursuant to 15 USC § 1692e. Plaintiff noticed in the written communication sent by U.S. Auto Credit that U.S. Auto Credit has falsified that plaintiff sent payments to them via a mailed payment.

40.

Because U.S. Auto Credit failed to comply with the plaintiff's debt validation dispute letter, on or about January 5, 2021, plaintiff sent a formal notice to U.S. Auto Credit giving them an opportunity to cure on their acquiescence (see Exhibit 24). Plaintiff also noticed errors in U.S. Auto Credit's reporting to the credit reporting agencies Trans Union, Experian and Equifax. U.S Auto Credit, Trans Union, Experian and Equifax all failed to update and report the plaintiff's disputed alleged debt as disputed pursuant to 15 USC § 1692e(8).

41.

On or about January 22, 2021, U.S. Auto Credit sent plaintiff a response letter of refusal to investigate his disputed alleged debt. U.S. Auto Credit continued in their response refusing to properly investigate or provide the proper documentation required by law to state that a valid claim of debt exists and re-sent copies of the same documents that do not prove any contract exists in regard to this alleged debt (see Exhibit 25). Plaintiff does not have any knowledge of U.S. Auto Credit nor any knowledge of the other entities in the document supposedly having an alleged security interest in the matter, nor has plaintiff mailed any payments to U.S. Auto Credit. In addition to this, U.S. Auto Credit willfully and negligently refused to comply because they believed that a credit repair organization was assisting the plaintiff (see Exhibit 25). Even if this were true, this is the plaintiff's lawful right to seek assistance in this matter as granted by the U.S. Congress whom backs the Federal Reserve Banking system. Pursuant to 15 USC § 1692f , U.S. Auto Credit is committing fraud and using unfair and unconscionable means in an attempt to collect an alleged debt not owed to them by the plaintiff.

42.

On or about February 6, 2021, plaintiff sent the Federal Trade Commission ("FTC") and the CFPB, via certified mail, his complaint regarding the willful negligence, willful non-compliance and negligent enablement of identity fraud on his name committed by U.S Auto Credit (see Exhibit 26). On or about February 12, 2021, the FTC sent plaintiff a response in regards to his complaint and on or about February 24, 2021 the CFPB sent plaintiff a response in regards to this same complaint (see Exhibit 27). To this present day, U.S. Auto Credit still has not responded to the complaint sent to the CFPB by the FTC or the plaintiff and continues to report this alleged account on plaintiff's credit report with no contract bearing plaintiff's signature to prove a valid debt or contract exists and U.S. Auto Credit still has not updated or reported the disputed alleged account as disputed with the credit reporting agencies nor has the credit reporting agencies updated that information either. U.S. Auto Credit continues to be willfully noncompliant and negligent and are depriving the plaintiff of his constitutional and consumer rights. Because plaintiff attempted several times to have this alleged debt validated to make sure it did not arise out of a bona fide error and U.S. Auto could not validate the alleged debt, plaintiff finally gave up and added U.S. Auto Credit to this lawsuit.

43.

On or about December 12, 2020, plaintiff sent a debt validation dispute letter to First Premier because after reviewing his credit report, plaintiff noticed First Premier is reporting an alleged account (see Exhibit 28). Here plaintiff

Page | 8- COMPLAINT

states that First Premier is a debt collector under 15 USC § 1692g. Plaintiff states this because pursuant to 15 USC § 1692a(6), First Premier uses instruments of interstate commerce or the mails to collect or attempt to collect, directly or indirectly, debts owed. Per the U.S. Postal Mail tracking system, First Premier received plaintiff's dispute on or about December 23, 2020.  First Premier did not comply with federal regulation 15 USC § 1692g(a) as they failed to respond within 5 days.

44.

On or about January 4, 2021, First Premier responded to plaintiff, after the 5 day period, with a letter stating that First Premier does not have to validate the disputed alleged debt nor provide the plaintiff any validation to the consumer (plaintiff). Because First Premier refused to validate the alleged debt, First Premier has violated 15 USC § 1692g, requiring debt collectors to validate debts and violated 15 USC § 1692e, by stating that they do not have to validate debts, which is false and misleading (see Exhibit 29).

45.

On or about January 23, 2021, pursuant to 15 USC § 1692g(b), plaintiff sent a second request for debt validation to the attention of First Premier's Chief Financial Officer giving First Premier another opportunity to validate the alleged debt (see Exhibit 30). Plaintiff also included a copy of a debt collection notice from a different debt collector, Asset Recovery Solutions, claiming they have an interest in this matter as well (see Exhibit 30). First Premier is reporting on the plaintiff's credit report that the alleged account is charged-off with a balance due to First Premier, however, Asset Recovery Solutions', a debt collector, debt collection notice states that Asset Recovery Solutions is in charge of collecting on this alleged debt. Pursuant to 15 USC § 1692g, when the debt cannot be validated it must be removed from the credit report. On or about January 23, 2021, plaintiff also sent Asset Recovery Solutions, a debt validation dispute letter to request validation of this alleged debt (see Exhibit 30). Asset Recovery Solutions did not respond to the debt validation and has not provided a copy of their IRS Form-2848 granting Asset Recovery Solutions power of attorney on behalf of the alleged First Premier account to do so.

46.

On or about February 3, 2021, First Premier sent plaintiff a letter dated February 1, 2021. Once again, for a second time, First Premier did not send written notice within 5 days (*See* 15 USC § 1692g(a)) and continued to refuse to validate the disputed alleged debt. Under threat, duress and coercion, First Premier demanded that plaintiff create an Affidavit of Unauthorized Use contract and willfully refused to validate the disputed debt unless plaintiff filled out and signed said document (see Exhibit 31). On or about February 3, 2021, First Premier sent plaintiff a second letter dated February 1, 2021 with what they believe to be validation of the alleged debt (see Exhibit 32). The two responses in the same day from First Premier contradict each other and the responses by First Premier are misleading pursuant to 15 USC § 1692e and First Premier confirms that they are a debt collector in fact.

47.

Upon plaintiff reviewing the information, plaintiff noticed that First Premier sent three itemized debt collection billing statements but did not send any signed contract bearing plaintiff's signature, nor did they provide proof that payments were received from the plaintiff as they are reporting on plaintiff's credit report. (see Exhibit 32). Pursuant to the Federal Trade Commission Opinion Letter by Attorney John F. LeFevre, an itemized billing statement does not constitute validation of a debt. Furthermore, this alleged account was opened in or around June 2016 as First Premier is reporting to the credit reporting agencies, however, First Premier did not send the plaintiff any itemized statements pertaining to the alleged account for the months of June 2016 and July 2016.

48.

On or about February 12, 2021 First Premier sent the plaintiff another letter claiming to have completed their debt validation investigation. By this response, First Premier has once again, for a fourth time, acquiesced in the matter by failing to comply to 15 USC § 1692g (see Exhibit 33).

49.

Because First Premier refused to obey consumer credit law, has caused harm to the plaintiff by violating his consumer rights and have violated 15 USC § 1692g and 15 USC § 1692e and refused remove the alleged account that they could not validate from the plaintiff's credit report, the plaintiff filed a complaint with the CFPB on or about March 3, 2021 against First Premier and Asset Recovery Solutions. First Premier and Asset Recovery Solutions conspired to willfully commit fraud on his name without having any contractual proof and without actually validating the alleged debt (see Exhibit 34). On this same day, the CFPB responded that the complaint the plaintiff sent to them pertaining to First Premier would be forwarded to the Federal Reserve Board because they are better able to help with his issue. The CFPB also entered the plaintiff's complaint into the Consumer Sentinel Network, a database operated by the FTC that is used to identify questionable business practices (see Exhibit 35).

50.

On or about March 8, 2021, the plaintiff received notice from the Federal Reserve Board that his complaint has been received and will be responded to by the Federal Reserve Bank of Minneapolis within 60 days (see Exhibit 36).

51.

On or about March 10, 2021 plaintiff received a letter in the mail from First Premier informing the plaintiff that they validated the alleged debt. Once again, for a fifth time, First Premier provided no validating evidence to the plaintiff of any kind that an actual validation of the alleged debt was done as they refused to do so on several occasions. First Premier continued to state that they are not required to provide any proof of a signed contract or validate the alleged debt (see Exhibit 37). This is false and misleading and violates 15 USC § 1692g and 15 USC § 1692e.

52.

On or about March 11, 2021, plaintiff received a notice from the CFPB in regards to Asset Recovery Solutions stating that they are no longer serving this alleged account. Asset Recovery Solutions also were willfully noncompliant by not responding to the plaintiff in regards to his debt validation dispute letter sent on or about January 23, 2021 (see Exhibit 38). Pursuant to 15 USC § 1692g, debt collectors must validate debts. Asset Recovery Solutions could not provide any contract belonging to the plaintiff and did not validate the alleged debt. After plaintiff made numerous attempts to have the alleged debt validated and to make sure that it didn't arise out of an error despite procedures reasonably put in place to avoid such errors, plaintiff finally gave up and added First Premier and Asset Recovery Solutions to this lawsuit because they could not validate the debt and First Premier continued to report the account to Trans Union, Equifax and Experian.

53.

On or about December 12, 2020, plaintiff sent I.Q. Data International, a debt collector (see 15 USC § 1692a(6)), a debt validation dispute letter via U.S. registered mail pertaining to an alleged account with I.Q. Data International reporting on his credit report (see Exhibit 39). I.Q. Data International received the plaintiff's debt validation dispute letter on or about December 18, 2020 and the same day I.Q. Data International refused to accept plaintiff's mailed debt validation dispute letter and returned it to him at or around 3:17 PM (see Exhibit 40). Debt collector are required to validate debts, 15 USC § 1692g and within five days of initial communication with a consumer in connection with a debt

Page | 10- COMPLAINT

collector shall send written notice to the consumer containing certain information about the debt, 15 USC §1692g(a). Plaintiff sent copies of the refused returned debt validation letter pertaining to I.Q. Data International to Trans Union, Equifax and Experian requesting removal of this invalidated account due to I.Q. Data International's acquiescence in the matter, however, the I.Q. Data International account on the plaintiff's credit report is still reporting with all three credit reporting agencies.

54.

On or about January 29, 2021 and January 30, 2021, I.Q. Data International sent the plaintiff debt collection notices with insulting language assuming plaintiff is having a hard time paying an alleged debt that they refused to validate (see Exhibit 41). Pursuant to 15 USC § 1692g(b) plaintiff sent a second debt validation to I.Q. Data International and made it to the attention of their Treasurer on or about February 5, 2021 to give I.Q. Data International an opportunity to cure their default (see Exhibit 42). I.Q. Data International received plaintiff's formal notice on or about February 11, 2021 at or around 11:17 AM (see Exhibit 43), however, I.Q. Data International once again failed to comply with 15 USC §1692g and 15 USC § 1692g(a). Because I.Q. Data International refused plaintiff's debt validation dispute letter on or about December 12, 2020 and still has not responded to date with any form of validation in regards the alleged debt after plaintiff made several attempts to have the alleged debt validated and to make sure that it didn't arise out of an error despite procedures reasonably put in place to avoid such errors, plaintiff finally gave up and added I.Q. Data International to this lawsuit for their willful noncompliance in their requirement to validate debts pursuant to 15 USC § 1692g.

55.

On or about December 12, 2020, plaintiff sent Ad Astra, a debt collector (see 15 USC § 1692a(6)), a debt validation dispute letter pursuant to 15 USC § 1692g via U.S. registered mail pertaining to an alleged account with Ad Astra that is reporting on his credit report because does not have any contractual debts with Ad Astra (see Exhibit 44). Ad Astra received plaintiff debt validation dispute on or about December 15, 2020, however, did not send plaintiff written notice containing certain information about this alleged debt until on or about December 24, 2020. Within five days after the initial communication with a consumer in connection with a debt, a debt collector shall send the consumer a written notice containing certain information about the debt. Ad Astra failed to comply with this Fair Debt Collection Practices Act regulation pursuant to 15 USC § 1692g(a).

56.

On or about December 24, 2020, Ad Astra sent plaintiff a debt collection notice claiming to be in charge of this alleged debt sent to Ad Astra by a third-party, however, failed to comply to the plaintiff's debt validation dispute letter in its entirety (see Exhibit 45). Because plaintiff has no signed contract with Ad Astra and Ad Astra failed to comply with the original debt validation letter, on or about January 4, 2021, plaintiff sent Ad Astra a second request for debt validation of this alleged account (see Exhibit 46). Ad Astra received the plaintiff's second debt validation request on or about January 8, 2021 at or around 12:36 PM (see Exhibit 47). More than 50 calendar weeks (350 days) has passed and plaintiff still has not received a response from Ad Astra to date validating this alleged debt per plaintiff's second request pursuant to 15 USC § 1692g. After plaintiff's multiple attempts to have the alleged debt validated and to make sure that it didn't arise out of an error despite procedures reasonably put in place to avoid such errors, plaintiff finally gave up and added Ad Astra to this lawsuit.

57.

On or about December 12, 2020, plaintiff sent a debt validation dispute letter via U.S. registered mail to the address being reported on his credit report by TBOM, a debt collector (see 15 USC § 1692a(6), pertaining to an alleged debt (see Exhibit 48). On or about December 24, 2020, the mailed letter was returned to the plaintiff as being undeliverable to the address that was reported on plaintiff's credit report (see Exhibit 49). After careful due diligence,

Page | 11- COMPLAINT

plaintiff noticed that TBOM has a different address reporting for each credit reporting agency and on their company website a different address as well. This is misleading pursuant to 15 USC § 1692e and is a violation of inaccurate information being reported on a consumer's credit report. The plaintiff notified the three major credit reporting agencies that TBOM is reporting false, misleading and inaccurate information. Trans Union, Experian and Equifax did not remove the alleged account from the plaintiff's credit report nor did they update the inaccurate information. This is a violation pursuant to 15 USC § 1681i(a)(1)(A) and 15 USC § 1681i(a)(5)(i)-(ii). In plaintiff doing more due diligence, plaintiff found a deliverable address belonging to TBOM on their company website.

58.

On or about February 5, 2021, plaintiff sent a formal notice to the attention of the Chief Financial Officer at TBOM via certified mail informing the defendant of their violations and requesting, for a second time, that the alleged debt be validated. The notice contained a copy of the original debt validation letter, a copy of the undeliverable mailed envelope, a copy of TBOM's Foreign Withdrawal for doing business in the State of Nevada where plaintiff resides and gave TBOM an opportunity to validate the alleged debt (see Exhibit 50).

59.

On or about February 12, 2021, TBOM received the plaintiff's formal notice and additional materials (see Exhibit 51). More than 45 calendar weeks (315 days) has passed and TBOM to date still has not responded but are still reporting this alleged debt on the plaintiff's credit report with false, misleading and invalidated information. In addition to this, TBOM has failed to comply and violated 15 USC 1692e when they did not report the disputed debt as being disputed to the credit reporting agencies Trans Union, Experian or Equifax as required. Furthermore, the credit reporting agencies once again did not update their reporting of the plaintiff's file to show that the alleged debt is disputed either. In addition to this, it is notated on the plaintiff's credit report with each credit reporting agency that TBOM no longer owns the alleged debt, however, it is still reporting. This is a violation of 15 USC § 1681 et seq. The Credit Reporting Agencies and TBOM's willful noncompliance and willful negligence pursuant to 15 USC § 1681n et seq and 15 USC § 1681o et seq, has caused harm to plaintiff as they are willfully violating the plaintiff's consumer rights. Plaintiff made several attempts to have this alleged account validated to make sure that it did not arise out of a bona fide error but the Credit Reporting Agencies and TBOM failed to comply so plaintiff added TBOM to this lawsuit.

60.

On or about December 12, 2020, plaintiff sent KAPS & Co., a debt collector (see 15 USC § 1692a(6)), a debt validation dispute letter via U.S. registered mail pertaining to an alleged account on his credit report (see Exhibit 52). On or about December 31, 2020, plaintiff was notified by the U.S.P.S. that delivery was attempted and that KAPS & Co. did not accept the mailed debt validation dispute letter, this is a violation 15 USC § 1692g (see Exhibit 53). Plaintiff scheduled a re-delivery and the debt validation dispute letter was delivered and received by KAPS & Co. on or about January 12, 2021 (see Exhibit 53). Pursuant to 15 USC § 1692g(a), plaintiff never received any written communication from KAPS & Co. as required. More than 14 calendar weeks (98 days) passed without the plaintiff receiving a response from KAPS & Co. after they had received his debt validation dispute on or about January 12, 2021. Plaintiff did not receive a response from KAPS & Co. until on or about April 21, 2021.

61.

Plaintiff noticed that this duplicate alleged account is being reported on his credit report fraudulently by KAPS & Co. and TBOM and made the major credit reporting agencies Trans Union, Experian and Equifax all aware of this. However, the credit reporting agencies continued to report the false, misleading, inaccurate and invalidated information violating, 15 USC 1692e et seq.

62.

On or about April 21, 2021, KAPS & Co sent the plaintiff a debt collection notice on company letterhead claiming to be the sole owner of this duplicate alleged debt which per the plaintiff's credit report is false and misleading pursuant to 15 USC § 1692e et seq. (see Exhibit 54). The KAPS & Co. response letter violates and fails to comply with the Fair Debt Collection Practices Act (see 15 USC § 1692g(a)(3)-(4)-(5)) in their response sent to plaintiff on or about April 21, 2021. KAPS & Co. has, once again, not validated the alleged debt. Plaintiff is convinced that pursuant to 15 USC 1692k et seq., 15 USC 1681n et seq. and 15 USC § 1681o et seq., KAPS & Co. is willfully being negligent, non-compliant and engaging in the enablement of identity fraud on his name and violating his consumer rights. Plaintiff made multiple attempts to have the alleged debt validated to make sure it did not arise out of a bona fide error, however, KAPS & Co. failed to comply several times. This gave the plaintiff no choice but to add KAPS & Co. to this lawsuit.

63.

On or about December 12, 2020, plaintiff sent I.C. System, a debt collector (see 15 USC § 1692a(6)), a debt validation dispute letter via U.S. registered mail pertaining to an alleged debt reporting on his credit report requiring I.C. System to validate the alleged debt pursuant to 15 USC § 1692g (see Exhibit 55). I.C. System received plaintiff's debt validation request on or about December 21, 2020 at or around 6:52 A.M, per the U.S. Postal Mail tracking system. (see Exhibit 56). More than five days passed without plaintiff receiving any written notice with information about the alleged debt. I.C. System failed to comply as required by 15 USC § 1692g(a). More than thirty (30) days passed without I. C. System validating the alleged debt or complying with the Fair Debt Collection Practices Act, 15 USC § 1692g et seq.

64.

Because the plaintiff had received no response from I.C. System, he sent a second debt validation letter via certified mail on or about February 3, 2021 to the attention of I.C. System's Chief Financial Officer with a copy of his original debt validation dispute letter from December 12, 2020 to give I.C. System an opportunity to cure their default and validate the alleged debt as required by 15 USC § 1692g (see Exhibit 57). On or about February 8, 2021, I.C. System received the plaintiff's second formal debt validation request notice at or around 6:52 AM (see Exhibit 58). Pursuant to 15 USC § 1692g, I.C. System for a second time, failed to comply by not validating the debt nor did they respond at all to the plaintiff's dispute, yet continued to report the invalidated information on his Trans Union and Experian credit report. It has been more than 50 calendar weeks (350 days) and I.C. System has willfully and negligently failed to comply to 15 USC § 1692g, 15 USC § 1692e and 15 USC § 1681 et seq. Plaintiff made multiple attempts to have this alleged debt validated by I.C. System to make sure it did not arise out of an error, however, I.C. System did not move in honor as required by federal law. After almost one year of disputing and dealing with the acquiescence, willful negligence and willful noncompliance and the defendant's entire blatant disregard for the law, plaintiff finally gave up and filed this lawsuit.

FIRST CLAIM FOR RELIEF
(FCRA – 15 USC § 1681n)

65.

Plaintiff realleges paragraphs 1- 64 as if fully set forth herein.

66.

Trans Union, Experian and Equifax willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. § 1681 et seq., including but not limited to:

a)      failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 USC § 1681e(b);

b)      failing to comply with the reinvestigation requirements in 15 USC § 1681i;

and

c)      failing to provide plaintiff his credit file pursuant to 15 USC § 1681g.

67.

As a result of Trans Union, Equifax and Experian's violations of the FCRA, Plaintiff has suffered, continues to suffer, and will suffer future damages, including denial of credit, damage to reputation, worry, distress, frustration, embarrassment, and humiliation, all to his damages, in an amount to be determined by the jury.

68.

Plaintiff is entitled to punitive damages in an amount to be determined by the jury.

69.

Plaintiff is entitled to actual damages in an amount to be determined by the jury in addition to any statutory damages in an amount to be determined by the Court.

SECOND CLAIM FOR RELIEF
(FCRA – 15 USC § 1681o)

70.

Plaintiff realleges paragraphs 1- 64 as if fully set forth herein.

71.

Trans Union, Equifax and Experian negligently failed to comply with the requirements imposed under the FCRA, 15 USC § 1681 et seq., including but not limited to:

a)      failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 USC § 1681e(b);

b)      failing to comply with the reinvestigation requirements in 15 USC § 1681i;

and

c)      failing to provide plaintiff his credit file pursuant to 15 USC § 1681g.

72.

As a result of Trans Union, Equifax and Experian's violations of the FCRA, plaintiff has suffered, continues to suffer and will suffer future damages, including denial of credit, damage to reputation, worry, distress, frustration, embarrassment, and humiliation, all to his damages, in an amount to be determined by the jury.

73.

Plaintiff is entitled to actual damages in an amount to be determines by the jury.

THIRD CLAIM FOR RELIEF
(FDCPA – 15 USC § 1692k)

74.

Plaintiff realleges paragraphs 38 - 64 as if fully set forth herein.

75.

Defendants IV through XII willfully failed to comply with the requirements imposed under the FDCPA, 15 U.S.C. § 1692 et seq., including but not limited to:

a) failing to provide plaintiff written notice after initial communication within five (5) days pursuant to 15 USC § 1692g(a);

b) failing to comply with the debt collection requirements regarding the use of false and misleading representations pursuant to 15 USC § 1692e;

c) failing to report plaintiff's debt validation dispute as disputed to the credit reporting agencies as required pursuant to 15 USC § 1692e;

and

d) failing to use fair and conscionable means to collect or attempt to collect a debt, as required by 15 USC § 1692f.

76.

As a result of Defendants IV through XII's violations of the FCRA, plaintiff has suffered, continues to suffer and will suffer future damages, including denial of credit, damage to reputation, worry, distress, frustration, embarrassment, and humiliation, all to his damages, in an amount to be determined by the jury.

77.

Plaintiff is entitled to punitive damages in an amount to be determined by the jury.

78.

Plaintiff is entitled to actual damages in an amount to be determines by the jury.

FOURTH CLAIM FOR RELIEF
(FDCPA – 15 USC § 1692k)

79.

Plaintiff realleges paragraphs 38 - 64 as if fully set forth herein.

80.

Defendants IV through XII negligently failed to comply with the requirements imposed under the FDCPA, 15 U.S.C. § 1692 et seq., including but not limited to:

a) failing to provide plaintiff written notice after initial communication within five (5) days pursuant to 15 USC 1692g(a);

b) failing to comply with the debt collection requirements regarding the use of false and misleading representations pursuant to 15 USC 1692e;

c) failing to report plaintiff's debt validation dispute as disputed to the credit reporting agencies as required pursuant to 15 USC 1692e;

and

d) failing to use fair and conscionable means to collect or attempt to collect a debt, as required by 15 USC 1692f.

81.

As a result of Defendants IV through XII's violations of the FDCPA, plaintiff has suffered, continues to suffer and will suffer future damages, including denial of credit, damage to reputation, worry, distress, frustration, embarrassment, and humiliation, all to his damages, in an amount to be determined by the jury.

82.

Plaintiff is entitled to actual damages in an amount to be determines by the jury.

### PRAYER FOR RELIEF

Plaintiff demands a jury trial on all claims. Wherefore, plaintiff Blanton Banks II prays for a declaratory judgment declaring the acts of the defendants unconstitutional and injunctive relief preventing defendants from being able to use erroneous information in plaintiff's credit report and grant plaintiff the maximum actual and punitive damages.

DATED this 29th day of December 2021.

/s/ Blanton Banks II, Authorized Representative

Blanton Banks II, Authorized Representative
blantonb22@gmail.com
Telephone: (313) 405-8321
Pro se